Jennifer Sheets on behalf of the Appellant and Petitioner, Mr. Robert Schwerin. I understand from the earlier comments that you'd prefer a ten-minute? Listen, you take what you need. We gave you twenty, and if you plan for twenty, you take twenty. I can But if you can finish sooner, that's fine, too. I'll try and finish sooner, and I just would like to No, you've got twenty minutes, and you do your best job for your client. Thank you, Your Honor. This case provides three main issues of due process violations and a related fourth ineffective assistance claim. I'd like to go Just a little bit I'm sorry. I have a cold. Oh, okay. The first issue of due process that I'll go through relates to the Sixth Amendment issue of notice, and here Mr. Schwerin was not given proper notice as to the charges that he faced and the evidence against him. The second issue of due process is informed by the first, and that is related to the prosecutorial misconduct which occurred at the closing argument in this case. And there are three distinct aspects of the prosecutorial misconduct, the first being the misstatement of the facts and law, the second being vouching for witnesses, and the third is a metaphor that was used by the prosecutor that was to inflame the passions of the jury. The third issue is a due process issue related to evidence of sexual misconduct that was introduced in the trial, and the second trial, not the first trial, which created the circumstances of a fundamentally unfair trial. At the first issue of due process related to notice I think is informed by the Fifth Amendment jury. And in Gray v. Raines this Court discussed the fact that underlying the Fifth Amendment right and the Sixth Amendment right, the identical nature of notice, and that the first part of that is to apprise the defendant what he must be prepared to defend against. Here Mr. Schwerin was not apprised of that. First in terms of the procedural process here that was laid out by the California law, I think there were two trials. But we're under the ENPA standard here that there has to be a violation of law as decided by the Supreme Court. And what's the relevance of the California law violation? Well, Your Honor, I think that the California law actually sets forth the standard of procedural guidelines for providing notice to a defendant. And if you look at, I mean, and that's why I can't argue a due process argument here, a violation of California law won't do it under ENPA. Correct, Your Honor. But in terms of what is required for Sixth Amendment notice, that is informed by California law in terms of what processes do for a defendant. And here my argument is that the process was not followed. And that is shown by the fact that the California law that lays out the preliminary hearing requirement wasn't followed. But what the due process complaint I hear you voicing is the failure to inform defendant of the charges. Correct. But what you're complaining about is not that an amended information wasn't given to him. You're complaining that process didn't comply with the California procedural requirements, but it still gave him the information as to what they were charging him with. I would argue that it didn't. Why not? Well, if you would compare, if you would slip in a different crime instead of sexual molestation, why don't you put in robbery? Would you permit an information to be amended that alleged incidents of robbery occurred over a one-year period? Well, I don't know that you could argue he didn't have notice they were charging him with robbery if the piece of paper said robbery. You're complaining about a due process violation for failure to inform him. Correct. It's not about failure to follow procedure. You're correct, but part of that information is the evidence and the nature of the charges. And here I would submit that in terms of Well, let's take your hypothetical. Why is it the defendant wouldn't know they're charging with robbery if the paper says robbery on it? Well, because they're, in those circumstances, there's no identification of the victim or the date on which the defendant would be charged. It's time to become a complaint about vagueness then, not about procedure. See, it seems to be kind of mixing and matching the problem. I mean, that all goes back to notice. I mean, if he's not notified of the exact circumstances of the allegations against him, then it permits the court to admit evidence that wasn't even brought up at the evidentiary hearing that was actually contrary to or in addition to the Are you arguing hypothetically now, or are you talking about this specific This specific case. Okay. What was left out? At the preliminary hearing, it was a very short preliminary hearing based on the It set forth generalized allegations sufficient under the reduced evidentiary standard of 288.5, and that was that there were several aspects of sexual misconduct which took place over a year by a resident child molester. When it was amended, there were 25 specific allegations of sexual misconduct that were alleged. And how long before the actual trial did that amendment take place? I believe it was it was about a few days after the preliminary hearing actually occurred. Yeah. And how long before the trial? A few months. A few months. So he so he knows a few months before the trial, he's got this amended information. Right. But no, no information as to what evidence it is related to 25. How did they find Yeah, but partly I'm going back to California law. And I understand, as has made been made perfectly clear, we're talking about a federal due process standard. But the purpose of the preliminary hearing is only to figure out whether there's enough evidence to bind him over for trial. The purpose of the preliminary hearing is not to give him a full preview of what the prosecution's case is going to be. Right. Correct. So, I mean, if he has several months before the trial the amended information so he knows what they're charging him with, I don't see the federal constitutional problem, even though maybe, although I don't even think there's a California problem, even though I'll assume for purposes of argument there's a California law problem. Well, I would submit that the problem is that the leeway, the lack of guidance by the courts procedurally allowed for new evidence that was submitted at the second trial that he wasn't even informed of by having an entire first trial. I mean, at the second trial You don't usually get a first trial preview of attractions. So the fact that you get caught by evidence you haven't heard before is usually the case. Usually you only have one trial. I think it's remarkable, though, that all of a sudden, you know, that it was a there's such a wide gap in terms of the generalized evidence that Where's the federal violation? Where's the federal law that was violated by all this that you say failed to give him notice of what and what's the federal violation? Well, how is he to prepare a proper defense if he didn't know what witnesses were going to be brought forth at trial and Your complaint is he didn't know the charges. In fact, the information detailed He had more information coming out of the information as to what the allegations were than he did from the preliminary hearing. Your complaint seems to evolve into a complaint about not having enough specific discovery into the evidence to be used by the prosecution. But what Federal right is that attached to? Well, no. I mean, I believe that the Sixth Amendment right to notice is clearly an issue. And the problem with that is that the information is more detailed than the preliminary hearing. So what you're really beefing about is that not getting a preview of coming attractions at the preliminary hearing. Well, no. I would just submit that if it was a different charge and not based on I mean, I think the prosecution here took advantage of the fact that it was a 288.5 allegation which permitted generalized evidence to suffice. And so then when they added the 25 specific charges, the defendant was not properly noticed. I mean, and this goes into the second aspect of due process, which was the prosecutorial misconduct. Here, the first aspect actually goes back to the generalized lack of notice. And that is that at the time when the prosecutor was laying forth his closing argument, he beseeched the jury to find the 25 counts individually. And in doing so, he went, he looked back to the record and cited facts that were not in evidence in terms of giving them a calculation method as to how they would go about finding the 25 counts charged. In doing so, he said that the calendar, you know, provides 56 weekends and they approximated that they went maybe every other weekend to their father's house. And that she said that approximately every time she went, he  would say, here's my witness, here's what the witness is going to say on every one of the charges at every one of the times, as we've generally alleged in the indictment. She would have to so that the prosecution would give you the witness and everything they were going to say on the stand. No, but I mean, if you're going to have 25 counts of violation of any penal code  I assume that there would be evidence related to each specific. I know. And what you're saying is you want, then you would have to say, so you're saying that the indictment should have alleged each one of the 25. Correct. Who said it and where? Well, no, just in terms of some date rather than a broad brush stroke of it happened within a year time period. I mean, I think that's really difficult to organize a defense against if someone's, you know, a robbery chart occurred anywhere from April 1989 to April 1990. I mean, it's difficult to say where you were on a given date and allege that you had an alibi. Yeah, now, we understand the argument. It makes it difficult for him. Right. I don't think you've got a Supreme Court case that so clearly states this and the state court's so far away from that case that you've got an EBBA claim. I mean, there's my problem. Next argument? And that's what I was getting into is the prosecutorial misconduct. Yeah, okay. And that is the first aspect of that, again, I think goes back to the lack of notice and the lack of structure provided by the court at the preliminary hearing, and is that here the prosecutor was permitted to generalize as to how many counts occurred, citing back to testimony which did not occur at trial, and that is that, you know, they went and visited their father over the course of a year, approximately every other weekend. And obviously, as I've noted throughout, there was generalized testimony. Nobody had a specific memory. The only testimony that was given as to the precise number of times the children visited was by the defense. Maybe I'm missing something here. This sounds to me like a direct appeal argument. Again, we're on habeas here under the rules of EDPA. Now, I assume you raised all these in direct appeal, or you should have. Is that right? Wouldn't you think so? Right. Okay. And now you're arguing all those things instead of error in the trial have now convoluted themselves into constitutional errors, as we've talked about, that has to be backed by Supreme Court law of violation. So the prosecutorial misconduct is hooked to what? Well, I mean, I would argue, first of all, that the first claim actually is that the California Court of Appeal, you know, found evidence as clearly contrary to the law. And then with regard to the prosecutorial misconduct claim, I would go back. The California Court of Appeals did what? Their Court of Appeal, their decision was clearly contrary to the law. I mean, and the facts were in their record. What law was that? Well, both California law, but also the facts and the record. I mean, here the California Appeal found that. That sounds like a direct appeal issue of error in trial versus a constitutional error. I'll move on to the misconduct issue. And that is that in the district court, they relied on Darden v. Wainwright. Well, in Darden v. Wainwright, I mean, the primary concern there was the prosecutorial's exaggerated inflammatory metaphor of the defendant as an animal and the prison guards keeping him on a leash, and then there was further inflammatory comments. In that case, the court specifically said that if there were other aspects of the prosecutor's misconduct, including misstatement of the law or evidence, that that would rise to a constitutional claim of due process. Yes. So what precisely is the prosecutorial misconduct here? Well, there's, as I said, the first is a misstatement of facts and law. The misstatement of fact being that he made up a number of counts that they could find if they went back and did math, very fuzzy math, related to the number of weekends in a year. Misstatement of the testimony and closing argument is pretty common. Yeah. But then in this particular case where there's 25 specific allegations and there's no testimony other than... What is the clear... Again, we're on AEDPA. What is the clear established Supreme Court precedent? Darden v. Wainwright. Right. And that's a case... But you're not very close to Darden for me yet. What other bad things did the prosecutor do? Okay. Further, after misstating the facts of the law, the facts related to the case, the prosecutor then went on to misstate the law and basically told, encouraged the jury that at this point in time they didn't have to presume innocence because the presumption of innocence was for the beginning of trial, and once evidence was submitted, they could move on from that, and so that it was no longer an issue that they didn't have to go through an artificial exercise of presuming innocence. I assume the defendant made an argument that said that's nonsense. I mean, the defendant has a closing argument, and my guess is the defendant said, you're out of your mind to say that. Unfortunately, no. And then there was... And the judge said, I'm going to instruct you as to the law, and what the prosecutor says as to the law is... Well, prior to the closing argument, yes, but there was no admonition afterwards, and there was no direction afterwards. Okay. And then the last... The last instruction was given before closing argument? Before, yes, sir. The last aspect is the metaphor, the ineloquent metaphor of the defendant as garbage, as human garbage, dehumanizing them, and the metaphor extended to the jury being the garbage collectors, and it was their job to take out the garbage. And while ineloquent, I also think it does inflame in a particular case... What is it precisely, again, that the prosecutor said?  Okay. And their job was to take out the garbage. And in this case, since it is such an emotional case with witnesses who are young and who are claiming very inflammatory claims, it's difficult to prey on the emotions of the jury. The other aspect was the witness vouching, and the witness vouching here was particularly difficult because the prosecutor kept personalizing all of the aspects of the case and saying that, I pray, I pray that I have not done anything, I have not withheld anything from you, which would make you think of the witnesses as liars, and please don't call the witnesses liars here. And there's an insinuation, underlying insinuation throughout the closing that the prosecutor made in personalizing it that there may have been other things that he could have added to the case which he left out. In addition to that, the vouching for the witnesses, also in this case, considering it was a fairly close case because the last trial ended in a mistrial and a hung jury, definitely played on the passions and the emotions of the jury. And I think that with witness vouching, in particular here, with these young witnesses and the fact that they had already gone through the trial before and stressing the fact to the jury that they had already been through a trial and that if they were to have, again, a hung jury or if they were to quit, you know, there might, you know, there's an issue of these poor witnesses having already had to testify. The last issue of due process is based on the introduction of the sexual misconduct evidence under 1101 and 1108. And this obviously has a fairly high standard with no permissible inference and that the introduction denied a fair opportunity to defend against. Here, obviously there were several aspects of the procedure were not followed and it created the circumstances where evidence was blurred and 25 specific counts was sufficed by one year continuous sexual molestation of 288.5. And in the second trial, the young son, Mr. Shorin's son, Robert, got up and testified to three additional counts of sexual misconduct, which he had not testified to in the prior trials. The first being an incident where he saw an image of a naked lady on a wall and his father pointed to it and laughed. And the second of which that there were raided X magazines lying around his father's apartment. And these two obviously are entirely irrelevant to the case at hand and don't, they're not illegal. They don't pose any threat to any prosecution. The third of which arguably could have fallen under 1108, and that is an account where Robert testified that he walked in on his father oral copulating his sister and asked him to join in. In this particular case, I find that the court should have, especially given the lack of procedure that preceded, gone through a balancing test in terms of the, especially here where it was eight years prior. All of these accounts happened eight years prior to the actual trial. The witnesses' accounts of them throughout the entire testimony is shaky at best. There's several times in which both Robert Shorin and Amber Shorin come back and they say, I don't know. I don't know. And in this particular case, when he claims to have walked in on his father and gives a very... I think we've got your argument. In order to save you some time for rebuttal, you're down to a minute and a half. I want to make sure you have some chance to respond. Thank you. Thank you. May it please the Court. Excuse me. Justin Riley on behalf of the Warden. Preliminarily, after reflection and review of Shorin's reply brief, we are withdrawing the exhaustion argument with regard to the ineffective assistance of counsel. Okay. I'll begin with the first argument. In Shorin's first argument, he basically argues that he didn't get constitutional notice of the charges against him. He was actually in the unenviable position of having a preliminary hearing, which some defendants waive and don't receive, and the first trial in which most of the evidence was presented. And at the start of his second trial, which is when we must gauge whether or not he received the notice, on the first day of that second trial, he had the final version of the amended information. He had the preliminary hearing testimony, which supported the charges, and he had already had the benefit of having that first trial in which the evidence was presented. I don't believe that an argument that he was blindsided by the charges can stand in the face of those facts. As for the addition of the 25 separate counts, I'd like to touch briefly, and we didn't get a chance to specifically argue this, but California law allows for charging and proof in the specific area of sexual crimes with minors in a little more vague way than maybe robbery. California has allowed this, and they've defined their laws. They've passed their laws in such a way that we can't review here on AEDPA, and some of the reasons for that are obviously the memory of minors and sexual offenses and having such young victims not be able to specify dates and times, et cetera. So I'd like to move on to the prosecutorial misconduct argument. The witness vouching, as we've stated in our brief, was the prosecutor simply arguing the witness's credibility and bias or lack thereof. He was taking the evidence, and he was making reasonable inferences thereon. I don't believe he ever said, I believe. This is how it goes. The inflammatory argument, it's important to note that, and I want to quote this to make sure, the prosecutor didn't call Schwerin human garbage. Instead, and I'm sorry, I'm looking for it right now. He said, and I want to get this precisely right. In your supplemental brief, 43 and 44, you've got a quote that includes, to use my previous analogy, it is time to take out the garbage. Mr. King says his client is a human being. Anybody who could do these things is human garbage. Sounds to me like he's calling him garbage. Oh, absolutely. But there's an important step there. There's a gap. To use that and to believe the prosecutor, the jury has to first believe, quote, anybody who could do these things is human garbage. They have to believe he did these things. They have to find him guilty. Yeah, but the question is whether or not this is unfairly inflammatory. In order for somebody to convict somebody because he's an animal, first they've got to believe that he did these things. The only question is whether this is unfairly inflammatory to the degree that it rises to a constitutional violation. I respectfully disagree that Darden versus Wainwright. I disagree with what I just said as to whether it rises to that level. You can disagree that it is sufficiently inflammatory. Right. In Darden versus Wainwright, the prosecutor actually called him an animal, said he is an animal. I would like to have seen his face shot off with a shotgun. I would like to see him sitting here without a face. In this particular situation, the prosecutor said anybody who could do these things. So first the hearer has to believe that the person who was human garbage did these things. But you're arguing also that the defendant did these things. How can you on one hand say he did these things and then anyone who could do these things? He's obviously referring to the same person. Obviously he is referring to Schwerin. That's not what I'm arguing at all. And are you arguing that this was proper argument? I'm not saying that I would have done the same thing, but it doesn't arise to the level of constitution. I'm not asking you that question. I'm asking you whether this is improper argument in your view. I don't think I'm in a position to condone his argument in terms of whether or not he should have done it. I think what I'm trying to argue is whether or not it arose to the constitutional violation. I don't. I wouldn't have done it. I can say that. But I don't. How about the other part, which frankly disturbs me somewhat more about don't call Amber a liar? Part of the problem here is that this is a second trial. And I couldn't help the feeling that there's an argument. Don't make these people go through it again. If you have any doubt, don't make Amber go through it again. Don't get hung. Convict this guy now so this other person doesn't suffer. I don't believe he specifically said don't make her go through it again. But he does allude to the fact that there was a second trial. Unfortunately, that evidence was presented at trial. Several of the witnesses alluded to the fact that there was a first trial. He was taking the evidence that came out at trial, and he was making reasonable inferences thereon. Now, I'm not saying his inferences were necessarily correct all of the time. It's not a tautology that a victim is either lying or telling the truth. But that was a reasonable inference to make. These allegations were so specific, so graphic, so involved that it's reasonable to infer that the victim could not be mistaken about such things. She had to either be telling the truth or lying. It's reasonable to infer that. And that's where our standard is in Darden v. Wainwright, which, by the way, the Supreme Court did not find that the alleged misconduct arose to the level of a constitutional violation, even though he called him an animal, expressed some desire to see him there without a face, and, you know, wished severe harm on him. Part of that reason in Darden v. Wainwright was the overwhelming evidence against the defendant, which I'd rather not go into unless the Court would like to hear it. But we do set it out on page 49 of our brief. Under the harmless error, we set out several of the more salacious facts that were adduced at trial. I don't have anything to add to my brief other than what I've stated. I would love to entertain any further questions should the Court have them for me. Any further questions from the bench? No. Thank you very much. Thank you. The sheets you've saved about a minute and a half. Okay. Thank you. As to the epistandard, I wanted to go back to the first argument, and that is the California Court of Appeal decision here found that the defendant was not faced with the possibility of a conviction for an offense entirely separate from and unrelated to the offense described by evidence at the preliminary hearing. And here I would submit that's actually entirely false, and that in light of the evidence presented to the State Court proceeding, there's no way that the Court could reasonably find that. As to the prosecutorial misconduct issue, I think that here, given the evidence that was given at trial, given the inflammatory, the emotive qualities of it, the Court has to look precisely at the procedures given and whether or not the Court stepped in to give guidance to the jury here. I believe that there was not the proper guidance given. In particular, I think the Court permitted the prosecutor to step way out of bounds, both in dehumanizing the defendant and in also, I think more importantly, misstating the facts. And I think that that leap of misstating the facts in the law in this case takes this to the level that Darden v. Wainwright suggests, that if there is a mistake in the rule of law of facts or if there is another aspect of the prosecutorial misconduct which brings up a potential constitutional violation for the defendant, then it would rise to depose this claim. And I would submit that here it did. And again, going back to the witness vouching as well, I think that the Court basically permitted the prosecution to encourage the jury to find this based on the lack of true evidence of 25 specific counts. Thank you very much. Thank both sides for their helpful argument. The case of Schwerin v. Knoll is now submitted for decision. We will now take a ten-minute break and reconvene to hear our final two cases on the argument calendar.
judges: Brunetti, Fletcher, Clifton